IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERTA GIBSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:18-cv-513 |
| | § | |
| TEXAS SOUTHERN UNIVERSITY; | § | JURY DEMANDED |
| AND MARY YOUNG, | § | |
| INDIVIDUALLY AND IN HER | § | |
| OFFICIAL CAPACITY. | § | |
| | § | |
| Defendants, | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**NOW COMES**, ROBERTA GIBSON, complaining of and about TEXAS SOUTHERN UNIVERSITY and MARY YOUNG, individually and in her official capacity and for cause of action would respectfully show the Court as follows:

**I.**
**PARTIES**

1.  Plaintiff Roberta Gibson is an individual residing in Houston, Harris County, Texas.

2.  Defendant Texas Southern University is a State of Texas publically-funded institution which may be served with process through its President Austin A. Lane, Ph.D. at 3100 Cleburne Street, Hannah Hall, Suite 220 Houston, Texas 77004. A copy of this Summons and Complaint is also being sent to Cheryl Cash, Interim General Counsel at 3100 Cleburne Street, Hannah Hall, Office 310B Houston, Texas 77004.

1

3.     Defendant Mary Young is named individually and in her official capacity as Chief of Police. She may be served with process at through Cheryl Cash, Interim General Counsel at 3100 Cleburne Street, Office 310B Houston, Texas 77004.

## II.
### JURISDICTION AND VENUE

4.     The Court has subject-matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff is suing Defendants under Section 1983 of Title 42 of the United States Code for violating the rights guaranteed to her by the First Amendment to the United States Constitution. Additionally, the Court has jurisdiction as this action also arises under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2003(a) et seq.)

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as all or a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## III.
### CONDITIONS PRECEDENT

6.     All conditions precedent to jurisdiction have occurred or been complied with: a Charge of Discrimination was jointly filed with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWC-CRD") and the Plaintiff's lawsuit has been filed within ninety (90) days of receipt of EEOC's issuance of a right to sue letter.  (*See* Exhibit A).

## IV.
### FACTS

7.     On February 15, 2008 Plaintiff began her employment with Defendant Texas Southern University ("Texas Southern") as an Administrative Assistant in the Office of the President.  In

August of 2008 she elected to transfer to the Department of Public Safety where she continued to work for the remainder of her tenure. Within a year of joining the Department of Public Safety her then-supervisor (Fmr.) Texas Southern Police Chief Remon Green informed her that he was attracted to her. He directed her to move into the office next to his and began making repeated unwelcome sexual advances.

8.      Although Plaintiff declined his advances Chief Green remained undeterred in his pursuit of Ms. Gibson for the next several years. These advances persisted and escalated creating an offensive and hostile environment. Plaintiff asserts that Chief Green hugged and kissed her on a daily basis and repeatedly requested sexual favors. In 2009 Chief Green began calling Plaintiff into his office and complementing her on her appearance. On one occasion in March 2009, Chief Green specifically inquired as to whether the complexion of Plaintiff's legs was "the same all the way up" referred to her private area.

9.      In 2010 Chief Green moved Plaintiff into an office adjacent to his own allowing him access to Plaintiff's desk through an internal door. Following Plaintiff's relocation, Chief Green's advances became even more persistent. He bluntly requested to see parts of her body including a specific request to "open her legs" to see if she was wearing a skirt. When Plaintiff declined his requests, Chief Green would become angry slamming doors, excluding her from important meetings and refusing to address her directly. Chief Green was also extremely hostile to any of Plaintiff's male colleagues that made the mistake of visiting her office.

10.     For the next several years, Chief Green continued unabated in his pursuit of Ms. Gibson. In 2014 he began texting her after-hours inquiring about her family and asking to visit her at home.

11.     In February 2015 Chief Green promoted Plaintiff to a new role on the Command Staff with the promise of additional compensation in future.  Seemingly emboldened by this promotion, Chief Green became even more aggressive in his romantic pursuit of Ms. Gibson.  In conversations in his office Chief Green described explicit sexual dreams involving the Plaintiff including one of her performing oral sex.  When Plaintiff refused his advances, Chief Green delayed the additional compensation that he promised when she was promoted to the Command Staff.

12.     In March of 2016 Chief Green called Plaintiff into his office claiming that he "had something to show her."  When she arrived in the office he opened his personal cell phone showing Plaintiff a photograph of his penis.  He then demanded that Plaintiff reciprocate by showing him a picture of her genitals.  Following this incident, Chief Green returned to her office on a daily basis asking "where is [my] picture."  With each inquiry, his words became more menacing.  Frustrated with the Plaintiff's failure to reciprocate, Chief Green stated that he "was not messing with [her]" demanding that she "get serious about showing him something."

13.     In the fall of 2016 Chief Green continued to pursue a romantic relationship with Ms. Gibson.  In an effort to be alone with her, he requested that she join him on an out of town conference in Florida.  Fearful of the possibility of traveling alone with Chief Green, Plaintiff requested that a colleague join them on the trip.  Fortunately, a last minute scheduling conflict prevented the Chief from attending the conference.

14.     Plaintiff was terrified of the possibility that Chief Green would continue to insist that she travel with him simply to get her alone.  She was even more concerned that her continued rejection of his advances would have grave consequences for her career.  Faced with what she

believed were two impossible choices, Mr. Gibson filed a formal complaint with the Human Resources Department at Texas Southern on October 10, 2016.

15. As a result of the Plaintiff's sexual harassment complaint, Texas Southern conducted an investigation into her allegations. At the conclusion of the investigation, the University determined that Chief Green had violated a number of policies his interaction(s) with Ms. Gibson and other female staff members. Plaintiff subsequently filed a Charge of Discrimination jointly with the Texas Workforce Commission and the Equal Employment Opportunity Commission on February 20, 2017. Chief Green resigned from his position in March of 2017.

16. Plaintiff's reports of sexual harassment along with Chief Green's subsequent resignation generated a significant amount of media attention throughout the region. Ms. Gibson was interviewed about her complaint and the University's response by a number of media outlets including the Houston Chronicle, ABC News affiliate KTRK-13 and NBC News affiliate KPRC-2.

17. As a result of her sexual harassment complaint the University's subsequent investigation and media attention, Ms. Gibson experienced a significant backlash from her supervisors and colleagues at Texas Southern. She was abruptly removed from the Command Staff, had many of her duties curtailed and forced out of her long term office space.

18. On May 17, 2017 newly appointed Police Chief Mary Young confronted Ms. Gibson regarding a minor task for the upcoming graduation ceremony. Inexplicably, Chief Young used the occasion to berate the Plaintiff about her desire to continue working for the University repeatedly asking her "whether she wanted to be there." She also shared that she had been receiving calls "from everywhere" about Ms. Gibson and her position. She claimed that the

University was urging her to interview someone else for Ms. Gibson's role in the department. Finally, Chief Young offered that if she had her way she would "get rid of the entire department" claiming that she had the backing of both the University and the Board of Regents to make changes.

19. Mr. Gibson was disturbed by Chief Young's threatening behavior since the two had very limited interaction until that point. She was unaware of any other issues with the department outside of the sexual harassment complaint that she had filed against Fmr. Chief Green. Based on the timing of their conversation Ms. Gibson determined that Chief Young's accusations were motivated by her report of sexual harassment and subsequent interviews with the local media about the complaint.

20. In addition to Chief Young's threats, Plaintiff has seen the majority of her duties reassigned to other employees or removed entirely. In the past year she has been moved to several cramped and inconvenient work stations. On June 1, 2017 her office was unceremoniously packed up without her knowledge and moved to a different location. A number of her irreplaceable personal items were lost in this move. To date, no one from the University has been able to locate these important personal items. In December of 2017 Plaintiff was forced to work in an office space that lacked adequate heating in near freezing temperatures.

21. Additionally, Plaintiff has received scrutiny and discipline in a manner that she has not experienced at any point in her tenure. The University appears to be moving swiftly to find any reason to justify the termination of Plaintiff's employment. On January 19, 2018 Ms. Gibson was formally reprimanded ostensibly for failing to remove items out of a designated workspace. This was a severe and unwarranted disciplinary action especially since Plaintiff had actually

moved the items in question. Although Plaintiff filed a written rebuttal to the disciplinary action pointing out several inaccuracies, the University has failed to remove this blemish from her employment record.

22. On February 13, 2018 Plaintiff was issued another formal written reprimand, ironically for failure to timely complete Title IX and sexual harassment training. Again, this was an extremely harsh punishment given the circumstances and represented a significant departure from the University's established practices. In response, Ms. Gibson filed a formal rebuttal noting that the write-up was a clear variance from the University's progressive discipline policy and likely issued in retaliation for filing a sexual harassment complaint. To date, the University has failed to retract the write-up or remove this disciplinary action from Plaintiff's file.

23. The University's actions have sent a clear and unmistakable message that Ms. Gibson is no longer welcome at Texas Southern specifically because she came forward to report sexual harassment.

V.
CAUSES OF ACTION
COUNT 1-FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

24. Plaintiff reasserts and incorporates by reference all of the above numbered paragraphs.

25. Plaintiff is a public employee of Defendant Texas Southern University as a Project Coordinator in the Department of Public Safety.

26. Plaintiff suffered retaliation due to speech protected by the First Amendment. Specifically, Plaintiff contends that (1) She engaged in speech involving a matter of public concern by reporting sexual harassment and the treatment of women in the Department of Public Safety to the University's H.R. Department, the United States Equal Employment Opportunity

Commission and to the Houston Chronicle and numerous media outlets covering these events. These reports are protected by the First Amendment because the Department of Public Safety at Texas Southern is directly responsible for enforcing the laws of the State of Texas including complaints of harassment and domestic violence.  (2) She suffered adverse employment action including: being removed from the Texas Southern-Department of Public Safety Command Staff, threatened with termination and subjected to multiple frivolous write-ups in an effort to justify her eventual termination.

27.     Plaintiff's speech was a substantial and motivating factor in Defendant Mary Young's repeated threats to terminate her employment.  Chief Young was aware of Ms. Gibson's sexual harassment complaint and protected speech in interviews with the Houston Chronicle and numerous media outlets regarding the University's response.  Chief Young demonstrated that she was aware of these complaints when she confronted Plaintiff very early in her tenure on May 17, 2017 repeatedly questioning "whether she wanted to be there" and claiming that she was getting "calls from everywhere" urging her to interview [other candidates] for her position.

28.     Defendant Mary Young acting in her individual and official capacity as Chief of Police and under color of state law, deprived Plaintiff of her right to free speech – guaranteed by the First Amendment to the United States Constitution – in violation of 42 U.S.C. 1983.

29.     Defendant Texas Southern University is liable for constitutional violations when the execution of an official policy causes the constitutional injury. Furthermore, a single decision by a policymaker, such as the Chief of Police, may constitute official policy when the decision-maker is also a final policymaker. Under state law, Defendant Young is a final policymaker with respect to employment decisions regarding the employees in her office. Accordingly, Defendant

Texas Southern University officially adopted and promulgated the decision to reduce Plaintiff's role in the department, remove her from the Command Staff and subject her to repeated discipline in an effort to justify her termination. Accordingly, Defendant Texas Southern University may be held liable for the violations of Plaintiff's constitutional rights.

30. Additionally, in light of the clearly established law at the time the adverse employment actions occurred, Defendants' violations of Plaintiff's constitutional rights were objectively unreasonable. Because the law has been clearly established, Defendant Young should have known that if she retaliated against Plaintiff, for exercising her First Amendment rights she could be held liable. Therefore, Defendant Young displayed reckless and callous indifference to over twenty years of clearly established precedent and is not entitled to qualified immunity from liability in this civil action.

31. Defendants acted intentionally to chill Plaintiff's speech, discredit her by damaging her employment record in anticipation of her eventual discharge for exercising her rights under the First Amendment to the United States Constitution.

## COUNT 2- TITLE VII-QUID PRO QUO SEXUAL HARASSMENT

32. Title VII of the Civil Rights Act of 1964 prohibits discrimination "against any individual with respect to compensation, terms, conditions, or privileges of employment because of an individual's sex." Any employer requiring sexual favors from an employee as a *quid pro quo* for bestowing job benefits upon that employee violates Title VII. *Jones v. Flagship International*, 793 F.2d 714 (5th Cir.1986), *cert. denied*, 479 U.S. 1065 (1987).

33. Pursuant to 42 U.S.C. § 2000(e)-2 Plaintiff Roberta Gibson pleads a cause of action against Defendant Texas Southern University for sexual harassment in violation of Title VII of

9

the Civil Rights Act of 1964.

34. The allegations in all paragraphs of this Complaint are hereby incorporated by reference with the same force and affect as if set forth verbatim.

35. Plaintiff is a member of a protected group and was subjected to unwelcome sexual harassment based on her sex. These sexual advances were made by her then-supervisor (Fmr.) Chief Remon Green. Her reaction to the harassment affected tangible aspects of the terms and conditions of her employment, with her acceptance or rejection of the harassment being either an express or implied condition to receipt of the benefit to or the cause of a tangible adverse effect on the terms or conditions of her employment. Specifically, when Plaintiff rejected Chief Green's advances he became angry slamming doors in the office, excluding her from critical meetings and refusing to implement the raise that he promised when he promoted her to the Command Staff.

36. Texas Southern is strictly liable for (Fmr.) Chief Green's actions since he was the Plaintiff's supervisor at the time the harassment took place and had authority over the terms and condition of her employment.

## COUNT 3- RETALIATION IN VIOLATION OF TITLE VII

37. Title VII of the Civil Rights Act of 1964 prohibits retaliation against an employee for opposing any unlawful employment practice or because the employee "has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this subchapter." *See* 42 U.S.C. § 2000e-3(a). This provision has two components, an opposition clause and a participation clause. *See Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1135 (5th Cir. Unit A 1981). Courts have consistently recognized the

explicit language of Title VII's participation clause is expansive and seemingly contains no limitations. *See Clover v. Total Servs., Inc.*, 176 F.3d 1346, 1353 (11th Cir. 1999). (The words 'participate in any manner' express Congress' intent to confer exceptionally broad protection upon employees covered by Title VII.) Referring directly to this provision, the Supreme Court has noted "[r]ead naturally, the word 'any' has an expansive meaning, and thus, so long as Congress did not add any language limiting the breath of the word, the term 'any' must be given literal effect." *See United States v. Gonzalez*, 520 U.S. 1, 5 117 S.Ct. 1032 (1997). Courts have also held that the expansive language of the participation clause protects an employee who defends himself against charges of discrimination. *Durant v. MillerCoors*, LLC, 415 Fed. Appx. 927, 932 (10th Cir. 2011). *See* EEOC Compliance Manual § 8-II(C)(1) n.24 (May 20, 1998).

### *Title VII Opposition*

38. Pursuant to 42 U.S.C. § 2000e-3(a) Plaintiff pleads a cause of action against Defendant Texas Southern University for retaliation in violation of the Civil Rights Act of 1964.

39. The allegations contained in all paragraphs of the Complaint are hereby incorporated by reference with the same force and effect as if set forth verbatim.

40. Plaintiff Roberta Gibson engaged in protected activity by reporting sexual harassment from her supervisor (Fmr.) Chief Remon Green on October 10, 2016. Her complaint documented Chief Green's repeated requests for sexual favors and his negative response when she rejected his advances.

41. In response to her sexual harassment complaint, Texas Southern has forced Plaintiff out of her workspace, removed many of the duties that she previously performed and removed her from the Command Staff. She has been subjected to several written disciplinary measures with

the intention of justifying the termination of her employment.

42. The effect of these practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affected her status as an employee.

43. Plaintiff alleges that she has been subjected to a hostile environment, reduced in rank and subjected to unwarranted disciplinary action in an effort to justify her termination in retaliation for her internal sexual harassment complaint in violation of Title VII's Opposition clause.

### *Title VII Participation*

44. Texas Southern University also violated the anti-retaliation provisions of Title VII by retaliating against Ms. Gibson for asserting her right to retain counsel during the course of an internal sexual harassment investigation. Ms. Gibson's decision to retain counsel during the course of the University's Title VII investigation and statement that she "wanted all questions referred to her attorney" in her email dated February 27, 2017 were protected under Title VII's participation clause.

45. Since the United States Supreme Court has made clear that *any* participation is protected under the statute, the Defendant violated Title VII by retaliating against Ms. Gibson for asserting her right to retain counsel during the University's internal investigation. *See* United States v. Gonzalez, 520 U.S. 1, 5 117 S. Ct. 1032 (1997); *See also Merritt v. Dillard Paper Co.*, 120 F.3d 1181 (11th Cir. 1997).

## VI.
### DAMAGES

46. Plaintiff has sustained damages as a result of Defendants' actions described herein. Accordingly, Plaintiff is entitled to an award of actual and compensatory damages in an amount

that exceeds the minimum jurisdictional limits of this Court, including, but not limited to: mental anguish and emotional pain and suffering in the past and future; impairment of reputation, personal humiliation; lost wages and benefits in the past and future; together with pre-judgment and post-judgment interest as allowed by law.

47. Plaintiff would further show that Defendant Mary Young's (individual capacity) actions were committed with malice or reckless indifference to the Plaintiff's constitutionally protected rights. In order to punish Defendant Young, individually, for her unlawful actions and to deter such acts in the future, Plaintiff seeks to recover exemplary damages against Defendant Young, in her individual capacity.

48. Additionally, as a result of Defendants' above-described actions and/or omissions, Plaintiff was required to retain Counsel. Accordingly, Plaintiff also seeks compensation for attorney's fees, as well as out-of-pocket expenses and costs.

## VII.
## JURY DEMAND

49. Plaintiff hereby demands a trial by jury and tenders the jury fee.

## VIII.
### PRAYER

For the reasons set forth above, Plaintiff Roberta Gibson respectfully prays that the Defendants be cited to appear and answer herein, and for the following relief:

a. a judgment in Plaintiff's favor on all claims asserted in this Complaint;

b. a judgment requiring Defendant(s) to reinstate Plaintiff's duties as a Project Coordinator;

c. past and future wages;

d. lost employment benefits;

e. compensatory damages;

f. exemplary damages against Defendant Mary Young, in her individual capacity, only;

g. pre-judgment and post-judgment interest as permitted by law;

h. reasonable attorney's fees and costs; and

i. for such other and further relief to which Plaintiff may show herself to be justly entitled.

       Respectfully Submitted,



_____
 Alfonso Kennard, Jr.
Texas Bar No. 24036888
Southern District Bar No. 713316
2603 Augusta Drive, Suite 1450
Houston, Texas 77057
(713) 742-0900 (main)
(713) 742-0951 (facsimile)
alfonso.kennard@kennardlaw.com
**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

**OF COUNSEL FOR PLAINTIFF:**



Ronald E. Durpree
Texas Bar No. 24055433
Southern District No. 1046738
2603 Augusta Drive, Suite 1450
Houston, Texas 77057
(713) 742-0900 (main)
(713) 742-0951 (facsimilie)
ronald.dupree@kennardlaw.com